Your Honors, I'd like to reserve approximately four minutes, depending upon how long it takes to explain the jurisdictional issues that you asked. Your Honor, Scott Neely representing Plaintiff Mr. Achziger, and the Court had asked for the parties to address Microsoft v. Baker and Brown v. Cinemark, and I will try to do that without talking too fast for Your Honor. You probably don't have to talk too long either, but could I just ask you, at least for my part, the District Court thought that Microsoft v. Baker really was not on all fours, and I'd just like you to give me your two cents worth on that. You think he was right? I think he was 100 percent right. What happened here, Microsoft involved a voluntary dismissal, a one-sided voluntary dismissal, in which the parties sought to revive their claims if they succeeded. And Brown v. Cinemark involved a circumstance where certification was denied, plaintiff's individual claims were set for trial, which is what happened in this case. The parties then further litigated. There was a summary judgment in Brown that the Court tentatively said would go both ways. Both parties would have something, so it would have to go forward. And then the parties voluntarily resolved the individual claim, allowing the rest to go forward. So are you relying here on, to sort of cut to the chase because your time is ticking, are you relying here on, it looked to me like there was correspondence and an intent to do a Norooz, Norooz, I don't know how to pronounce that. Norooz, exactly. Yes, and there was concern, I think on your team's part, that that was not going to be possible because of Brown, or sorry, because of Microsoft v. Baker. So at this point, are you relying on the fact that you continued to litigate and litigated the individual claims through the coverage issue? I, I, I, exactly. In fact, opposed the settlement. Is that it? Well, they proposed the settlement, actually. Yes, but you imposed enforcement of it pretty vigorously. Well, and the reason for that was that at this point, this Court's decision in Brown had obviously not come out. And at that point, it was unclear how Microsoft v. Baker was going to be done. And we had originally proposed the Norooz language, okay, and then what happened was, is that defense counsel, you know, there's nothing wrong, started to crab walk on that. They were trying to take away and change the release language. What Judge Settle eventually did when he found a settlement was he imposed that Norooz language. Yes, over your objection, so, so you not only continued to litigate, it seems to me, but you, and this, this to me, it's a little ironic, but I think it's why there is jurisdiction. It seems to me that it was not voluntary, kind of more like you were kicking and screaming, but you settled. You are right, Your Honor. Okay. And, and, and so I'm in the unusual situation of benefiting from the Court's ruling that I. You're just going to be happy. Veciferously disagreed with, Your Honor. Yeah, that's how it looks like to me. But okay, all right. Yeah. Thank you. And, and, and so, Your Honor, this is, in, in the, in the policy arguments, and the reason for the original ruling was a one-sided dismissal, that's just not what happened here. Got it. This was a case where, if you look at the record, there was $5,400 at issue. I was, if you look at ER 33, it was going to cost them $100,000 to try the individual case. It was going to cost us $50,000. We didn't want to spend $150,000, and the insurance company didn't want to spend $100,000 to try a $54,000, $5,400 client. Okay, so if we assume jurisdiction. Yes. Does your client, do we say it, is it Oxsager? Oxsager. Okay. Oxsager's insurance policy involved a collision-comprehensive coverage, which precluded diminished value, and the proposed class members had an uninsured motorist coverage, which required proof of diminished value. So I want you to address both typicality and predominance. For typicality on a breach of contract claim, how do these two coverages create the same or similar harm among the class members? And for predominance on a breach of contract claim, how do common issues predominate over individual issues? First of all, Your Honor, as hopefully is clear in the briefing, IDS itself looked at these provisions and found that they both covered diminished value. Their 30B6 deponent, Mr. Bohm, admitted that there was coverage under both uninsured motorist and comprehensive end collision. The Washington State Supreme Court found coverage in Moeller under factually and materially identical policy language, found that there was coverage. The district court itself found coverage on partial summary judgment that there was coverage under uninsured motorist. So there was no difference in typicality. Well, but they don't have the same insurance policy. No, they do have the same insurance policy. It's one policy, two separate coverages, but they both cover diminished value. And they not only cover diminished value because courts have held they both cover diminished value, both Judge Settle himself found it, other courts have interpreted the language as covering diminished value. And recently, the Washington Court of Appeals in Kales v. State Farm found coverage. But the same conduct, like for typicality on the Consumer Protection Act claim, that it's got a, how are the proposed class members harmed by the same or similar conduct? It's different conduct that brings it into play. It is not different conduct. The company has a common policy that applies to both coverages, both their internal documents which are cited in the briefing, and Mr. Bohm, their corporate designee, admitted the claims are handled identically. The only distinction- So let me, can I interject for just a minute? I heard you just say that the claims are handled identically by the insurance company according to the deponent. This is almost the same question, but not quite. Is the legal meaning of the two provisions the same? I understand they're both covered, but are they covered in the same way? They are, Your Honor. They're covered in the same way, both legally because under both provisions you get the market measure of damages under WPI 30.12 as a matter of Washington law. That's what Mueller holds. It's also what the recent Kales v. State Farm and what Judge Settle himself held, that you get the damages that are due to property damage. That's the same thing. You get the market measure of damages that are both. And the company itself in their guidance document says that all first party claims are handled in the same way. The reason is because they owe the obligation to pay the market loss in value of your vehicle after repair under both coverages. There's no difference. So what do you make of the argument or how do you respond to the argument that because of the difference in the types of damage and the difference in the types of vehicles, it will be very difficult to calculate and therefore, according to the argument, the class is properly not certified? Well, there's two answers to that. The first one is that we put on proof of a market measure of damages which would apply to the entire class, with the exception of you might have one weird deal like the Ferrari that the district court found. The mythical Ferrari. The mythical Ferrari, which there's no evidence in the record, but that was the basis for the argument. So we have been able to put on proof to address with common evidence the amount of loss because it's a market measure. We did market measure and this is the market measure. Are you now talking about class-wide damages then to be divvied up individually? Individually? Well, you both do class-wide and individually because there is a measurement that's been done through looking at auction data that tells you exactly how much a car would be left based upon the extensiveness of the damage. It's all statistical. How do we know, forgive me for interrupting, how do we know that those autos, what do we do with the ones that may or may not have been involved in accidents previously? Okay. And that, Your Honor, both IDS has a method to do that using a computer system. They go and they pull accident data. IDS has addressed this claim using a computerized method, using a formula that was agreed 20 years ago in Georgia. You're going to have to walk me through it. Okay. IDS has a computerized method. Method. So I understand the junkyard part. Yes. And looking at the damage that we can see that just happened in this most recent accident. Okay. What's the common denominator to figure out what went into that accident? Okay. Well, two things. First of all, when IDS handles a claim, they look through insurance databases and various databases to see if there's a prior claim. And then based upon- For that car? For that car. And then they apply a computerized formula where they take between zero and 25% off. They don't inspect it. How do we know, forgive me, but aren't you assuming that IDS is the only insurer for that car since the beginning of time? No. No. Or does it- Because there's national databases. If you look in the briefing, there's an insurance services office. Where do I look in the briefing for that? If you look in the damages section in the citations that are listed under the prior accident section, let me find it, Your Honor. Maybe mention it when you come back up. I don't want to take your time. But that's one of my questions. Okay. Yes. Okay. I'll get you the specific site to that. Okay. So not only do they do it on an automated basis, but there's nothing you can find by looking at the car. It's been repaired. The car was repaired. If you wanted to look for a prior accident, you wouldn't go look at the car. I mean, it's just illogical. It doesn't make any sense. IDS doesn't do it. They do it in a computer formula. What Dr. Siskin did, our analysis is, is that he said that first of all, you can figure out statistically the likelihood of prior overlapping damage, and you can do a discount based upon that. Now, the issue before the Washington Supreme Court in Mueller 3 was that two dissenting justices in Mueller 3 said that whether it was a prior accident was a liability issue under Washington law. The majority in Mueller 3 said, no, it's not. It's a damages issue. That's right. And given the applicable damages standard, you can make adjustments based upon statistical proof because you come up with the entirety of the award that's accurate, number one. And second of all, this happens all the time. Damages are always an individual issue, and they never defeat certification. What the district court did. Well, I wouldn't say they never defeat certification, sir. Okay. You're right. That's hyperbole. Yeah. Yeah. Okay. But, but, but, this is certainly not an example where you cannot do it on a common basis. I mean, obviously, there could be some thing, but, but this Court's precedence in Levada What's your strongest authority? Levada itself is, is, is, I think, directly on that point. But Your Honor, we'd cite Levada v. Medline, Yemez v. Allstate Insurance Company, Yakoma v. Medline National Life Insurance Company. These are all cited in our brief, Your Honor. Okay. And in fact, Mueller too, itself, held the same claim. Well, you also have a, you have a pending motion before this Court seeking judicial notice of three Washington Supreme Court judgments. How did those proceedings have a direct relation to these cases? Because they're not the same policy, right? Well, no. The insurance coverage is the same, Your Honor. The, this is standard policy language that, that's used by all various insurance companies. Those cases rejected the arguments that were accepted by Judge Settle. They're not, they're not binding in any way. Our point is that what happened here was, is that you have to have a logical basis in the evidence. You have to have reasonable assumptions. Well, if they're not binding, why are, what, I mean, why are we looking at other cases that, it's, they're not, it's not involving this case. There are other cases that aren't binding. So why should we take judicial notice of those? Because if you're asking. So, like, we should just decide if we would decide the cases the same way, or what? I mean, that seems. No, but, but the standard of review, Your Honor, is that you ask whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inference in the record. The fact that other courts have looked at the analysis done in this case by the district court below, and, and explain why it is not valid, and why it makes no sense under Muller 3, as to prior accidents. Why it makes no sense as to comparative fault. That was the other one. But our standard of review is abuse of discretion. So I'm, I'm having a hard time seeing how, that, that, that's a pretty wide latitude. So you want us to look at, at. Levada, Your Honor, the standard of review under Levada, which is the applicable one for review of class certification decisions, says that you look at, quote, whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts of the record. That's at 716F3rd at 513. The court recognized the Washington courts have resolved this differently, and he recognized there are different standards, which kind of goes back to Judge Callahan's point, and they're not binding. So I, I fully appreciate your, your typicality and predominance arguments. I continue to struggle with your superiority argument because of the damages issues. The superiority argument, Your Honor, is that the only basis that the court found that there was a lack of superiority was purportedly because there was a hypothetical Ferrari owner who might be undercompensated using Dr. Siskin's approach. That was it. That is the only independent basis. Now, he recited the predominance arguments, which we've shown comparative faults already in the file, and this issue of, of prior accidents, I think, has been decided as a matter of Washington state law. So there is a distinction, Your Honor, between some of the management, some of the issues and the issue of prior accidents. That was expressly determined by the Washington Supreme Court. That should have been followed. Okay. Maybe when you come back, if you could, and then I'll stop. Could you come, when you come back with the citation for the damages? I will, Your Honor. Place in the record. I'll take another closer look. Thank you. Good morning, Your Honor. Good morning. Fletcher Alford for the appellee and defendant, IDS. As the court knows, my client and the plaintiff entered into a settlement, which the district court found, one term of which was that neither party would contest the appellate jurisdiction of this court. But, of course, the court, this court issued an order last week directing that we address that issue. The appellate jurisdiction can't be given to us by consent. Exactly. As an officer of the court, I feel obliged to address that issue. I'll try to be brief, but it's important and it's... How do you get around Brown is my problem. Well, let me talk about Brown. Brown was a case that I think is distinguishable in a lot of ways because in Brown, the court not... And this is important. I believe it's at page 1200 of the court's decision in that case. In Brown, the district court not only denied the cert motion, but granted a motion to dismiss certain of the claims on the merits. And then there was a summary judgment motion, too, that the court granted partial summary judgment on some of the claims as well. So, what you had then was a ruling on the merits. And the decision makes clear, I think it's at page 1200, that the plaintiff appealed... So there's a... The plaintiff dismissed the remaining claims on the merits. And there's a long line of cases in this circuit that say where the court dismisses some of the claims on the merits but leaves others, the plaintiff has the option of dismissing those claims and there's a final judgment. And that's exactly what happened in Brown. There was a decision on the merits, dismissing certain claims on the merits that didn't happen here. Well, so you're distinguishing between a dismissal and a settlement? It's critical, Your Honor. Yes. There was an adjudication adverse to the plaintiff in Brown on the merits in which the court said that those claims had no merit. And that allowed the plaintiff to appeal. And it's important how this court has treated Brown in subsequent cases, which I think is very enlightening. In the Rodriguez v. Taco Bell case, 896F3rd952, this court talked about Brown and it talked about Baker and it explained how they interacted with one another. So if you'll indulge me for a quote, I think it's very helpful. The court is talking at page 955 to 956 and distinguishing Baker and saying that that case, Baker, involved an attempt to use the voluntary dismissal mechanism to obtain an appeal as of right in order to review an earlier denial of class certification. The Supreme Court, Judge Ginsburg, by the way, writing for a unanimous court, held that the denial of class certification was not reviewable because the plaintiff had already been denied a discretionary appeal under 23F. So I'll pause there for a minute and say that's exactly what happened here. Well, it's Naruse, I think Naruse was prior to this, but I guess your argument would be that it's still good law and that in Naruse there was a voluntary settlement like with jurisdiction. I think Naruse is probably no longer good law. You don't think it is good law? Following Baker v. Microsoft. And is holding an event really goes to mootness. But whether there was in this case, it seems to me the record's clear. There was an attempted circumvention. That's how I read it, an attempted Naruse. And then over the, ironically, ironically, then the plaintiff kind of over his dead body. I mean, he's kicking and screaming, trying not to settle. So what we're really looking at, I think, what Microsoft teaches us, we're looking at whether there's really kind of a voluntary circumvention falling on your sword to get around Rule 23F. I don't see that here because after losing the class cert motion, they went on, first of all, to litigate the coverage issue, right, as opposed to just unilaterally dismissing to try to get up to on appeal, but also really vigorously oppose the settlement. Yes, you are. Why is this the same? Well, it's the same in this way, because you're right, there was a motion for partial summary judgment on coverage. Plaintiffs won that. They're not appealing from that. They lost. But neither did they walk away from the denial of class cert and just try to fold up their tents. That's right. But the key aspect of Baker v. Microsoft that this court and Rodriguez emphasized was there's a circumvention of Rule 23. There was a petition here, the plaintiff's petition, this court, for the right to appeal immediately under 23. It was denied. Pardon me? I said, yes, that didn't work so well for him. Right. And what the court said in Baker v. Microsoft and what this court said about Baker v. Microsoft in Rodriguez is where that happens, where you've 23 is a very careful balancing because in the Cooper's v. Libran case, the Supreme Court said there's no death knell doctrine in federal court. Many state courts have adopted this death knell concept that says that essentially if a death knell is deemed to be infeasible for plaintiff to continue litigating the case, then it's a death knell and plaintiff can immediately appeal. Cooper said, no, that doesn't apply in federal court. So in reaction to Cooper's. But it does not become entirely irrelevant. That is to say, it becomes relevant when you're talking about superiority. This death knell does not automatically produce that. But the fact that otherwise you're not going to get much litigation goes to the superiority question later on. Right. But the death knell doctrine does not apply in federal court. That was a holding of Cooper. So there's no right to immediate appeal. So the drafters of the federal rules came up with Rule 23. And in Baker v. Microsoft, the Supreme Court judge, Justice Ginsburg, for a unanimous court, talked about Rule 23 and said that Rule 23 F was designed as a very careful. But she also she also said, if you get voluntary dismissal as a way around the 23 F, you're going to have a possibility for gamesmanship because you take a volunteer dismissal, you refile, you get a settlement. You don't have that option. That was really the rationale of Brown. Well, she she really said that that Rule 23 F was this important compromise. And if you go through the Rule 23 F process and you lose, you can't circumvent that by then saying, well, now I'm going to dismiss and appeal. And that's exactly what you said in Brown that you can. Well, no, but in Brown, there was no 23 F. There was no 23 F motion. What is the possibility of gamesmanship here? That's what I keep coming back to. That's what I read from in Microsoft, Justice Ginsburg opinion that you mentioned. And it doesn't seem to be to be gamesmanship. These well, it's a particular case. They seem to really be strenuously objecting. So Justice Ginsburg, in her opinion, focused on the important balancing act that was the creation of Rule 23 F and that that is essentially the exclusive remedy for an immediate appeal. And if you lose that, you have to litigate the case to the end. There is no litigators. Forgive me for nothing, but he litigated the tough part, the coverage issue. Is it would you have us rule it at this point? We lack jurisdiction because he didn't want to go all the way to trial for a fifty five hundred dollar claim and and incur this the six figure attorney's fees to get through the trial. Really? Your Honor, that is the rule. As a result, I think he didn't do right. Well, no, Your Honor. I mean, that is the rule, like it or not, whether we like it or not, that is the rule as a result of Cooper's v. Library. Answer to my question. I'm not trying to give you a hard time. It's your time that's ticking. But since he litigated, he went forward in his individual claim, litigated the coverage issue. I'm sure that was not an easy win. I'm sure you both litigated vigorously. And then I think the only thing left would have been to litigate his individual damages claim. That's right, Your Honor, because there was no final adjudication on merits adverse to him. He won his partial summary judgment. He doesn't appeal from that. He lost the summary judgment on the enforceability of the settlement. But in footnote two, his opening brief, he says, I don't appeal that. So there's no appeal. See, this is what's critically different about from this case in Brown. In Brown, there was an adjudication on the merits adverse to the plaintiff. The court in Brown dismissed, and I urge the court to look at this language from page 1200 of the opinion, the court dismissed several of the claims on the merits, not by settlement, but adverse to the plaintiff. So, OK, but you don't it would be great if from your perspective not to have all these class action lawsuits. So, well, I'd be out of work. Yeah, that's about well, that's but but for your client, yes, they would prefer that. Yes. So if if there is no jurisdiction, then you're just home free here, right? No, I mean, look, 23 F. I mean, that's what Justice Ginsburg explained in Baker. The whole legal community got together, commentators, legal scholars, legal professors, judges, jurists, and made a compromise in 23 F, which said if there is a ruling on cert, either side can seek an immediate appeal. But that's the exclusive remedy for an interlocutory appeal. Otherwise, you have to litigate the case to the end like everybody else does. Get a final judgment and then appeal. And that's why Baker v. Because in Brown, at page 1200, the court explains that there was an adjudication on the merits of certain of the claims. And then under longstanding rule, the plaintiff has the right to dismiss the other claims and then appeal not only the class cert, but the denial of those claims. There's no appeal here. The only that's what makes this a circumvention of rule 23 F, because I think we get the argument. OK, and you've got four minutes and 50 seconds to talk about assuming jurisdiction. Talk about a lot of stuff. Yeah, yeah. We'll make sure you get a chance to say what you want to say. Well, we won't give you the rest of the day, but let's hear what you have to say. I appreciate that. So I think it helps. And the Wal-Mart v. Duke's decision kind of gives us this intellectual framework for deciding class cert, at least predominance and commonality. First, you have to look at under the substantive law. What does the plaintiff have to prove to establish his or her claims on the merits? And then once you figure that out, the next question on predominance is, can those elements of proof be proven by evidence predominantly common with respect to liability, whether it's with respect to the obligation your client had and your client's not fulfilling its obligation? Seems to me that there's commonality. Well, no, Your Honor, because so why not? OK, why not? Because what sort of smells like damages issues in this case really is core liability issues, because the first cause of action is for breach of contract. And the elements there are, number one, these plaintiffs were in accidents and number two, their vehicles experienced some damage that could not be repaired. And as a result, there was a diminished value of the automobile. And most importantly, finally, my client breached the contract by not paying them enough for that. So that question, was there a diminishing value? How much was it? Did we pay them enough? Another way to look at that is that under Mueller three, the Washington Supreme Court has told you that under Washington law, your client is supposed to pay diminished value and it's supposed to tell the claimant about the diminished possibility, diminished value possibility and simply not telling them as a breach of their obligation. Now, it may be in a particular case that there is no diminished value, but they've breached the obligation by not telling the claimant about that. Well, that's an important issue, too, Your Honor, because there is a second cause of action here for bad faith. And that's exactly what the bad faith claim alleges that my client. Well, I'm not I'm not even saying that there's bad faith. It's just a breach of the obligation. You're supposed to you're supposed to tell them. And that's two components. There's the coverage issue on the breach of contract, the coverage issue that he won on summary judgment, and then the duty to inform the policyholder of the coverage, as Judge Fletcher said. So those seem to me like pretty core common issues. Why are not? Why are they not? Well, they're not, especially on the duty to inform, because, again, the claim here and we have to examine whether common issues predominate by reference to the claims pleaded. And that claim is a claim that we breached the contract in bad faith by concealing from people their potential right to DV. Now, you only have to look no further than Mr. Ochsinger, the named plaintiff, to know why that's uncommon. And the district judge was too diplomatic to dwell on this. But this case was a setup lawsuit. Mr. Ochsinger, the day of his accident, he called the plaintiff's expert, Mr. Harbour, who's a television and radio personality who talks all about DV. And makes his living working for the plaintiff's bar, suing insurance companies in these cases. So the very day, and I took, I took his deposition, Mr. Ochsinger's, and he told me that he immediately knew he had diminished value. And what has this got to do with your client's position on the coverage issue, counsel? Well, Your Honor, you just asked me about this idea of concealment. No, I asked you about the coverage issue. I asked you about the coverage issue. Okay. You defended on the coverage issue on the basis that Judge Callahan alluded to, I think. And, and, you know, we read these briefs carefully and there was this issue about the coverage and the exclusion. We went, we went over that again. I don't want to take up all your time, but it seems to me your team lost on that issue, on coverage. And then there's a second issue about whether folks were duly informed about having coverage for this type of loss. Well, on a very narrow issue, yes. The district judge ruled that there is coverage under the UIM. So there are many diverse issues here. One of which is the fact that this would be class would include both people who had uninsured collisions and people who had UIM uninsured. But, but I want you to respond to the argument on that because I asked the question and I'm going to answer that adverse to what you just said. I just heard from the other side that yes, those are different clauses or different coverages, but I heard that they operate identically with respect to DV. Yeah, that's just this calculation. Does the calculation change if the insurance policy involves a collision, comprehensive coverage, or an uninsured motorist coverage? Totally changes. Well, he said it didn't. It totally changes. The UIM provisions of the policy are largely statutory. And in a UIM situation, uninsured, underinsured, or hit and run situation, the insurance company steps into the shoes of the underinsured, uninsured, or absent driver, and it becomes an adversarial relationship between. Yeah, but you've not gotten to the point yet. The question is, do you calculate the diminished value identically under the two provisions? Well, the calculation of diminished value would be the same, but it's highly individualized. You said it was totally different in response to Judge Callahan's question. The coverage issues. The coverage issues are totally different. That's not Judge Callahan's question. I thought Your Honor asked about coverage issues. Judge Callahan's down there. I said, does the calculation change if the insurance policy involves a collision, comprehensive coverage, or an uninsured motorist coverage? And I'm talking about the DV diminished value. The calculation is the same, but it's highly individualized in each case. And even though plaintiff... Let me make sure you understood the answer. The calculation is the same if we're either under a UIM or a collision. Calculating... That's a yes or no? Yes. Calculating DV. Okay. But it's highly individualized. In each case, it's highly individualized. Okay. That's the next question. Yeah, sure, sure. That's the point, though. There's a mountain of expert testimony in this record. Even though plaintiff's own expert, that TV personality, Daryl Harbour, when I took his deposition, and this is in the record, he told me when he's not involved in a class action, when he's actually trying to represent the best interest of one person, he does a highly individualized analysis to determine DV. He inspects the vehicle. He looks at the maintenance records. He interviews the owner. And when you're calculating, and sometimes you do actually give DV, when you calculate it, do you do that? Your Honor, the... If there's no, you can say it quickly, or you can wait a long time before you say it. Agent has discretion, Your Honor. That's the short answer. But it sounds as though you've got a rather mechanical formula for doing it without requiring that you go out and inspect the vehicle. Is that right? Typically, it would not involve inspection. You're right. Yeah. But, Your Honor, what's happening now, though, is we're being sued. And the plaintiff claims that that method is wrong. So this is not... Well, the plaintiff claims it's wrong. Among other things, it sounds as though if there's been a prior accident, you automatically take off up to 25%, which strikes me as ironic that you're complaining about the precision of the formula that they're advancing when yours is perhaps more imprecise. Well, Your Honor, I think there's a fundamental misimpression that's been created by the Plaintiff's Counsel here, and something we're missing, which is critically important. Once litigation is instituted, due process rights kick in. What my client does in his private business affairs is one thing. What the court is obligated to do is ensure due process to absent class members and my client. So you're asking for more process for yourself than you give to your clients. I heard... That's what I just heard you say. Well, I'm asking for... My only point is that due process has to be... Is your due process, you're requesting what was talked about in Walmart in terms of not using an expert to that you can't? Yes. Is that the due process you're talking about? Essentially, yes. In Dukes v. Walmart... I think that Judge Scalia talked about. In Dukes v. Walmart, the court said that the Rules Enabling Act provides that no procedure rule can alter any party's substantive rights. So the fact that a case has been certified as a class doesn't deprive us of any rights we have. It doesn't deprive absent class members of any rights we have. And let me give you just one, I think, very telling example of why just doing what my client does internally, doing that in litigation, imposing that on all absent class members would not be appropriate for the court to countenance. Let's say, and this is not, it's more than hypothetical. Let's say that my client determined in a UIM accident that it's insured was 90% at fault for the accident. The other driver was minimally at fault and just had low insurance. So there's not enough insurance. 90%. Uh, so are, is, uh, Mr. Neely suggests that all class members would be bound by that, by that fault determination. So fault is a highly individualized issue. You have to have a trial to get fault. Wait a minute. You're saying to me that Mr. Neely says that if one of the policyholders is 90% at fault, all of the  I don't think he says that. No, Your Honor. He says that that policyholder would be bound by our determination. And that sounds to me like Mr. Neely putting his interests above class members, because that's what he says. Uh, fault is a highly individualized issue in the UIM cases. And before it can be determined if there's, once we get through all the individualized issues about whether there was DV, how much DV, whether the car has been returned to its pre-accident condition, once we get through all of that, then we have to decide, okay, who's at fault and how much? And Mr. Neely would say, well, we'll just take the insurance company's word on it. Well, again, that is really Mr. Neely putting his own interests above the interests of class members. And there are many other examples of that sort of thing. You're saying he's putting his own interests above the class members. You're using his argument to escape certification altogether. I don't, if he wins, he gets something. If, if you, if you reject the argument, you get everything. So I'm not sure the degree to which Mr. Neely is betraying his clients here. Well, well, Your Honor, it's for the court though, to decide whether it's going to countenance that sort of a scenario. And let me give another example that I think is telling you. I want to talk about typicality. Okay. All right. For typicality, how is the harm among proposed class members, not the same or similar? Because they weren't even harmed by the same course of conduct. Um, on the, there's a bad faith claim for that. We adjusted these claims improperly. The company struggled, frankly, with the changing law in Washington state. There was an evolving law about whether DV was covered, whether it wasn't covered. And there are still questions about that. The lesser of language in our policy, uh, has never been adjudicated in Washington, whether that lesser of language in fact, uh, requires us to pay DV. So, um, Okay. So what, on predominance, how do individual issues predominate over common issues? There is a mountain of individualized issues here. And Mr. Newley focuses only on the evidence that he suggests supports commonality, but that's not the standard review. We have an abuse of discretion. And this judge presided over the case for two years. He's presided over multiple DV cases. There's a mountain of briefing and the experts talked about this in detail. They talked about the fact that under a substantive law before any DV is owed. So this is not a damages issue. It's a threshold liability issue. Before a dime of DV is even possibly owed. It has to be the case that the car was not returned to its pre-accident condition due to this type of damage. And the experts say, even one of the plaintiff's experts said, there's no way to prove that except on an individualized basis, Mr. Newley's expert talks. You answered my question. I don't know if you have other questions. That's one example. I don't, I don't have any more questions. Okay. Okay. I probably exhausted my time. Oh, you got seven and a half minutes. Extra. So yeah, it's way gone, but we like to get the right answer. So we like to have a question. Thank you very much. Thank you very much. If you'd put three minutes on the clock, please. Thank you, Your Honor. To quickly, Your Honor, the citations that show the method by which common evidence of the amount of damages could be proved are contained on our brief at page 41, that's ER 403 to 405 and ER 411 to 412. Okay. I've read those. Okay. So next, as part of that, the, the fact that the defendants do this with common evidence is found on the brief at page 18, the citations are there. And the fact that plaintiffs also had a method of proof is also contained at page 39, which also has the citations. Okay. That's ER 133, 285 and 108 to 109. That shows that plaintiffs have a common method by which they can calculate out the issue of prior accidents and a deduction for that. The citations are contained on page 39. Well, I, okay. I think I've looked at it all, but thank you for repeating them. Thank you. To address, Your Honor, Judge Callahan, the, the citations that show that in fact, it's a common practice are contained on page 17. In fact, we even bolded it in the brief. They, this is what they wrote themselves. On all first party collision, comprehensive and UIMPD claims, open the diminished value coverage, explain the coverage to the insured, calculate and pay any O diminished value amount and provide the calculation form and cover letter to the insured. And of course, there's also citations to the deposition testimony from Mr. Bone, their own 30B6. They have one process, one policy it's done on all three coverages. So therefore we have common issues and those common issues predominate. We're not dealing with difference. I'm looking at the district court's decision on typicality and I wonder how that can be an abuse of discretion because of both of the typicality. You've got to get it completely wrong. He did get it completely wrong. Abuse of discretion is pretty, pretty broad. He, he, he did get it completely wrong because first of all, there is no change in, in, in claims handling process. And that's made very, very clear in the record. The only change in claims handling practice was that they went from not paying the claim to in 2013, paying the claim under Mueller. That was explained multiple times. Says that you failed to show the claims are typical of the class with respect to the breach of contract that Oxigar seeks to represent a class of insureds who have different IDS policies than him. His policy contains a diminished value exclusion to the collision and comprehensive coverage. And the proposed class definition, however, includes class members who policy do not contain that exclusion. There are therefore two types of coverage at issue in this class, collision and or comprehensive and UIM coverage. And as we showed, and as I just read you, your honor, IDS says that they have coverage under both. We proved as a legal matter that there is coverage under both. They have a common practice. Do you rely primarily for that point with deposition testimony of Boehm? Well, but Boehm said that, but as well, we've cited to their own claims manual in the thing. So these are, these are pre-litigation positions. Uh, I'm not sure I needed to hear it, but I think we just heard once the coverage is invoked, the calculation is made identically, irrespective of the revision of the policy. Exactly. What you have here is that the lawyers tried to gin up an argument that was contrary to what their client and their client 30B6 had said about what the law is, and then the law was determined favorably to us in Mueller. There's coverage under Mueller. And second of all, it was determined favorably by the district court himself, finding that there was coverage under the uninsured motorist provision. Um, um, we've, you're over time too. So if you'd like to sum up, your honor, I would only just briefly say on the, on the, the, the Microsoft versus Baker, which I did find interesting that he spent most of his time talking about, I think that I think the key distinction there is, is that judge Ginsburg was dealing with a circumstance where there was a voluntary one-sided dismissal. And if you read Baker carefully, the key phrase is that quote, instead of pursuing their individual claims to final judgments on the merits, that's actually what happened here. There was a determination on the merits and, and, and, and certainly the court did not intend to, uh, to rule or believe that the only way that you can ever get review is not when the parties agree and the court issues rulings and you go forward, but you actually have to go try the whole thing on the merits. Okay. I think we understand the argument. Thank both sides for your helpful arguments and we're in a general.
judges: W. Fletcher, Callahan, Christen